IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                                                              No. CR 19-3113 JB

JOHNATHAN VIGIL,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed May 27, 2026 (Doc. 1019)("Objections"). The Court holds a hearing on June 2, 2026. <u>See</u> Clerk's Minutes at 1, filed June 2, 2026 (Doc. 1020)("Clerk's Minutes"); Draft Hearing Transcript of Proceedings at 1 (taken June 2, 2026)(Court)("2026 Tr.").[1] The primary issues are: (i) whether a 2-level reduction is appropriate, under U.S.S.G. § 2D1.1(b)(18), where Defendant Johnathan Vigil asserts he meets the reduction criteria under U.S.S.G. § 5C1.2(a); and (ii) whether Vigil possesses a firearm "in connection with" a drug trafficking conspiracy, making 18 U.S.C. § 3553(f)'s "safety valve" provision inappropriate, where Vigil states that he possesses the firearms for self-defense and not in furtherance of the conspiracy. The Court concludes that: (i) a 2-level reduction is not appropriate, under U.S.S.G. § 2D1.1(b)(18), where Vigil asserts he meets the reduction criteria under U.S.S.G. § 5C1.2(a), because Vigil possesses a firearm in connection with the conspiracy; (ii) Vigil possesses a firearm "in connection with" a drug trafficking conspiracy, making § 3553(f) inappropriate, because Vigil does not prove by a preponderance of the evidence that he does not possesses the firearms in connection with his drug trafficking conspiracy when they are given to him by the drug ring; (iii) the Court does not reduce the offense

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

level, because § 3553 does not apply; (iv) the offense level is 25 and the criminal history category is I; and (v) the guideline imprisonment range is 57 to 71 months.

## FACTUAL BACKGROUND

Vigil does not object to the facts in the United States Probation Office's Presentence Investigation Report, filed June 7, 2022 (Doc. 693)("PSR"), except those in ¶ 5, at 4. See Objections at 6. Those undisputed facts are the Court's findings of fact. See Fed. R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact."). Regarding PSR ¶ 5, at 4, Vigil withdraws the objection, because the calculation between cocaine and cocaine base does not change the offense level. See 2026 Tr. at 6:25-7:6 (Court, Baker)(agreeing to "leave five the way it is," because ¶ 5, at 4, relates to the plea agreement and does not change the facts). See PSR ¶ 57, at 17 ("The drug amounts listed above result in a total converted drug weight of 681.18 kilograms. It is noted, the difference between the drug amounts listed above and the amounts stipulated to in the plea agreement does not affect the base offense level.").

On April 1, 2022, Plaintiff United States of America files the Information at 1, (Doc. 693), charging Vigil with "Conspiracy." PSR ¶ 1, at 4. That same day, Vigil pleads "guilty to a one-count Information. Count 1 charged Conspiracy, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(C)." PSR ¶ 1, at 4. The conspiracy case arises out of a New Mexico law enforcement Task Force Officers ("TFO") and Drug Enforcement Agency ("DEA") investigation, which takes place between approximately 2018 and 2019, targeting participants of the Robert Hockman and Robert Padilla Drug Trafficking Organizations ("DTO") operating in Bernalillo County, New Mexico and elsewhere in New Mexico. PSR ¶ 13, at 5. Investigators identify Vigil as a participant in the DTO. See PSR ¶ 14, at 5. As a member of the DTO, Vigil "collected from Padilla's 'Las

Vegas crew' . . . . Vigil then transported the drug proceeds to Padilla in Albuquerque and took a new supply of drugs from Padilla to Las Vegas[, New Mexico] for distribution among the other Las Vegas drug dealers." PSR ¶ 41, at 13 (this Court adds the alterations). During his involvement with the DTO, Padilla instructs Vigil on "the finer points of drug trafficking, including how to conduct a quick hand-to-hand transaction, and how to prepare crack cocaine from powder cocaine." PSR ¶ 42, at 13-14.

On September 19, 2019, investigators execute a search warrant at Vigil's residence, which yields "30.33 net grams of heroin," and "33.8 grams of crack cocaine." PSR ¶ 45, at 14. Investigators also recover "a Springfield Armory Saint 5.56 caliber rifle, a Bersa Thunder .380 caliber pistol, a Bryco Arms Model 38 .380 caliber pistol, a Keltec CNC Industries 12 gauge shotgun, various caliber ammunition and shotgun shells, magazines, and body armor." PSR ¶ 45, at 14. That same day, investigators arrest Vigil. See PSR at 1.

## **PROCEDURAL BACKGROUND**

On May 27, 2026, Vigil files the Objections. See Objections at 1.[2] In the Objections, Vigil makes a quasi-factual argument, concerning PSR ¶ 5, at 4, and a legal argument, concerning a 2-level reduction in offense level. See Clerks Minutes at 2. As the Court notes above in the Factual Background, Vigil withdraws his factual objection. See 2026 Tr. at 6:25-7:6 (Court, Baker). Accordingly, here, the Court summarizes only Vigil's legal argument concerning the 2-level

---

[2] The Court notes that, at the beginning of the June 2, 2026, sentencing hearing, it is unaware that Vigil has objections to the PSR. See 2026 Tr. at 5:14-16 (Court)("Are you making an objection to the PSR or not making an objection . . . ."). The confusion results from Vigil titling his objections as "Sealed Ex Parte Sentencing Memorandum," Objections at 1, and the USPO indicates he does not have objections to the PSR, see Addendum to the Presentence Report at 1, filed May 20, 2026 (Doc. 1017) ("No objections have been filed by the defendant."). Accordingly, at the sentencing hearing, the Court hears Vigil's arguments and takes the Objections under advisement. See Clerks Minutes at 2.

"safety valve" reduction.  Objection at 6.

Vigil argues that § 2D1.1(b)(18)'s safety-valve exception applies and that therefore, a 2-level reduction in offense level is applicable.  See Objections at 8.  According to Vigil, a reduction is appropriate, because he "clearly satisfies 4 of the 5 prongs of the safety valve [and] the only real question is whether he 'did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense.'"  Objections at 6 (quoting 18 U.S.C. § 3553(f)(2) and U.S.S.G. §5C1.2(a)(2))(this Court inserts the alterations).  Vigil concedes that he possesses a firearm, but contests that he possesses the weapon "in connection with" the offense. Objections at 6.  Vigil cites United States v. Zavalza-Rodriguez, 379 F.3d 1182 (10th Cir. 2004)("Zavalza-Rodriguez"), for the proposition that a defendant can possess a firearm under § 2D21.1(b)(1) and still receive a 2-level offense reduction under § 5C1.2(a)(2).  See Objection at 6-7.

Vigil asserts that the firearms that investigators find when they execute the search warrant of his home "were possessed for self-defense and to protect his family against Padilla's threatened retribution for Johnathan having quit working for him."  Objections at 7.  Vigil alleges that he does not have the "requisite intent to facilitate the DTO's transactions or objectives," and, therefore, he does not possess the firearms "in connection with the drug trafficking offense," because he quit the DTO.  Objections at 7-8 (citing Rosemond v. United States, 572 U.S. 65 (2014)).  Vigil further argues that the language in PSR ¶ 6, at 4, -- that "the parties agree the defendant may be eligible for the 'safety valve' provision set forth in 18 U.S.C. § 3553(f)(1)-(5)" -- supports an inference in favor of a reduction.  Objections at 8.  He draws this inference from the extensive discussion of the reduction in the plea agreement, reasoning that such language is unnecessary if the reduction does not apply, because "the evidence and discovery was fully-known to both parties" at the time

he enters his guilty plea.  Objections at 8.

## LAW REGARDING THE UNITED STATES SENTENCING GUIDLINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges advisory.  See United States v. Booker, 543 U.S. at 261.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.  Accordingly, even though the Guidelines are not mandatory, courts must consult them for advice in arriving at an appropriate sentence.  See Peugh v. United States, 569 U.S. 530, 541-42 (2013).  The Guidelines provide a starting point for the court's determination of a proper sentence.  See Gall v. United States, 552 U.S. 38, 50 n.6 (2007)("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."); Peugh v. United States, 569 U.S. at 541 ("The post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.").

Congress directs sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> **(A)**    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)**    to afford adequate deterrence to criminal conduct;
>
> **(C)**    to protect the public from further crimes of the defendant; and

**(D)**    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts also to consider: (i) "the nature and circumstances of the offense," as well as the defendant's "history and characteristics"; (ii) the available sentences; (iii) the Guidelines; (iv) any pertinent Sentencing Commission policy statements in effect on the date of sentencing; (v) the policy favoring uniformity in sentences for defendants who commit similar crimes; and (vi) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).

The United States Court of Appeals for the Tenth Circuit holds that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ." United States v. Cage, 451 F.3d at 593.  A court's careful consideration of the Guidelines is proper in light of the fact that "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." Rita v. United States, 551 U.S. 338, 349 (2007).

"[A] sentence within the applicable Guidelines range is presumptively reasonable." United

States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v.

United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d

1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not

one that the trial court can or should apply.  See Kimbrough v. United States, 552 U.S. 85, 90-91

(2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.  Instead,

the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor

of the advisory[3] Guidelines sentence.  See Kimbrough v. United States, 552 U.S. at 90-91; Gall v.

---

[3] Attorneys and courts often say that the Guidelines are advisory, but it is more accurate to say that the resulting Guidelines ranges are advisory.  See Gall v. United States, 552 U.S. 38, 46 (2007)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory.").  The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court does not have to apply, however, a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Segura-Rodarte, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

> The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

> . . . .

> The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take

United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M. February 13, 2008)(Browning, J.). The Supreme Court recognizes, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-

---

them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

62.

## LAW REGARDING 18 U.S.C. § 3553(f)

The statutory safety-valve provision, 18 U.S.C. § 3553(f), provides:

(f)    Limitation on applicability of statutory minimums in certain cases. -- Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that --

(1)    the defendant does not have --

(A)    more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B)    a prior 3-point offense, as determined under the sentencing guidelines; and

(C)    a prior 2-point violent offense, as determined under the sentencing guidelines;

(2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)    the offense did not result in death or serious bodily injury to any person;

(4)    the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of

> the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).  A mandatory minimum limits a court's discretion during sentencing and restricts a court's ability to impose a sentence below the statute's mandatory minimum.  See, e.g., United States v. De Paz, 200 F. App'x 791, 792 (10th Cir. 2006)(unpublished)[4](holding that, "when a defendant pleads guilty to a crime that carries a mandatory minimum sentence, the court has no discretion to do anything other than impose the sentence required by the statute."); United States v. Cummins, No. CR 06-1339 JB, 2008 WL 4821626, at *8 (D.N.M. July 1, 2008)(Browning, J.)("While the court may vary below the advisory Guideline range, the court does not have such discretion to depart or vary below the statutory minimum sentence.").  Only when Congress provides a statutory exception to a mandatory minimum may a court impose a sentence below the mandatory minimum.  See United States v. Campbell, 995 F.2d 173, 175 (10th Cir. 1993)("When a sentence is fixed by statute, any exception to the statutory directive must also be given by statute.").

### LAW REGARDING U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2(a)(2)

---

[4] United States v. De Paz is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. De Paz, United States v. Leroy, 298 F. App'x 711 (10th Cir. 2008), and United States v. Andrade-Vargas, 459 F. App'x 762 (10th Cir. 2012), have persuasive value with respect to a material issue, and assists the Court in its disposition of this Memorandum Opinion and Order.

U.S.S.G. § 2D1.1(b)(18) provides: "If the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels." U.S.S.G. § 2D1.1(b)(18). U.S.S.G. § 5C1.2(a) provides:

> (a)    Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:
>
> (1)    the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
>
> (2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3)    the offense did not result in death or serious bodily injury to any person;
>
> (4)    the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a).

## LAW REGARDING U.S.S.G. § 2D1.1(b)(1)

Section 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."  U.S.S.G. § 2D1.1(b)(1).  In Zavalza-Rodriguez, the Tenth Circuit considers whether a court may conclude that U.S.S.G. § 2D1.1's 2-level enhancement applies when the court decides that the defendant does not possess a firearm in connection with the offense pursuant to U.S.S.G. § 5C1.2(a)(2).  See 379 F.3d at 1184.  The Tenth Circuit emphasizes that § 5C1.2(a)(2)'s language requires that the defendant "possess a firearm . . . in connection with the offense," while the § 2D1.1(b)(1)'s language requires that the firearm "was possessed."  Zavalza-Rodriguez, 379 F.3d at 1185 (quoting U.S.S.G. §§ 5C1.2(a)(2) and 2D1.1(b)(1)).  The Tenth Circuit concludes that "a court [can] refer to the same weapon that 'was possessed' by the defendant for purposes of § 2D1.1(b)(1) as a weapon that the defendant did not 'possess . . . in connection with the offense' for purposes of § 5C1.2(a)(2), without any taint of contradiction in the use of 'possess.'"  Zavalza-Rodriguez, 379 F.3d at 1185 (quoting U.S.S.G. §§ 5C1.2(a)(2) and 2D1.1(b)(1)).

## ANALYSIS

The issue before the Court is whether the 2-level "safety valve" reduction applies where Vigil concedes that he "possesses" a firearm for purposes of § 2D1.1(b)(1), but contends that he does not possess the firearm "in connection with" the offense for § 5C1.2(a)(2) purposes.  Vigil argues that he maintains the firearms for his personal protection and not to further the DTO's objectives.  The Court concludes that: (i) the 2-level reduction is not appropriate, because Vigil does not establish by a preponderance of the evidence that he does not possess the firearms in connection with the conspiracy; (ii) Vigil possesses the firearms in connection with the conspiracy, because he acquires the firearms from Padilla before leaving the DTO, his admission that he retains the firearms for protection demonstrates their capacity to serve as tools of the trade for drug trafficking, and his explanations regarding the firearms are inconsistent; (iii) the offense level is

- 12 -

25 and the criminal history category is I; and (iv) the advisory Guidelines range is 57 to 71 months.

Congress enacts mandatory-minimum sentencing provisions for numerous offenses, including the drug-trafficking crimes at issue here. See, e.g., 21 U.S.C. §§ 841(a)(1), (b)(1)(B). Congress also "'refine[d]' the operation of those mandatory-minimum provisions for 'the least culpable participants' in federal drug-trafficking offenses by creating an exception to mandatory-minimum sentences, commonly known as the safety valve." United States v. Hargrove, 911 F.3d 1306, 1326 (10th Cir. 2019)("Hargrove")(quoting H.R. Rep. No. 103-460, at 3 (1994)). At Congress' direction, the Sentencing Commission incorporates the safety-valve provision into the Guidelines. See U.S.S.G. § 5C1.2, cmt. background. Section 5C1.2(a) provides relief from an otherwise applicable mandatory minimum sentence if a defendant satisfies five criteria. See U.S.S.G. § 5C1.2(a)(1)-(5). Because the United States concedes that Vigil satisfies the remaining criteria, the sole provision he disputes is whether "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 5C1.2(a)(2). The defendant bears the burden of establishing all five criteria by a preponderance of the evidence. See Hargrove, 911 F.3d at 1326 (citing United States v. Verners, 103 F.3d 108, 110 (10th Cir. 1996)). If the defendant satisfies each criterion, the sentencing "court shall impose a sentence without regard to a statutory minimum." Zavalza-Rodriguez, 379 F.3d at 1185.

The Tenth Circuit articulates "three principles informing what it means to posses a firearm 'in connection with the offense.'" Hargrove, 911 F.3d at 1327 (quoting U.S.S.G. § 5C1.2(a)(2)). First, a defendant possesses a firearm "'in connection with the offense' if the firearm facilitates or has the 'potential to facilitate' the offense." Hargrove, 911 F.3d at 1327 (quoting United States v. Hallum, 103 F.3d 87, 89 (10th Cir. 1996)). Second, a court must focus "on 'the defendant's own

conduct' in evaluating his eligibility for safety-valve relief." Hargrove, 911 F.3d at 1327 (quoting Zavalza-Rodriguez, 379 F.3d at 1186). Finally, possession under § 5C1.2(a)(2) is active possession, rather than the constructive possession sufficient for the § 2D1.1(b)(1) enhancement, such that there is a "'close connection linking the individual defendant, the weapon and the offense.'" Hargrove, 911 F.3d at 1327 (quoting Zavalza-Rodriguez, 379 F.3d at 1187). These principles collectively support the conclusion that Vigil possesses the firearms "in connection with the offense."

## I.   THE FIREARMS HAVE THE POTENTIAL TO FACILITATE THE DRUG TRAFFICKING CONSPIRACY.

Vigil does not establish, by a preponderance of the evidence, that the firearms lack the potential to facilitate the offense. Vigil contends that the "firearms were not used as a sword to facilitate the DTO's objectives, but rather as a shield to protect against the DTO's retaliation." Objections at 7. According to Vigil, Padilla threatens to kidnap him and his family if he fails to repay money Vigil owes to Padilla after leaving the DTO. See Objections at 2-3. Even accepting Vigil's account as true, his explanation does not sever the connection between the firearms and the conspiracy. To the contrary, Vigil's reason for possessing the firearms arises directly from his participation in the DTO and his subsequent departure from the organization. Vigil does not acquire the firearms independently of the conspiracy or for reasons unrelated to it. Rather, Padilla sells and provides the firearms to Vigil while he is still participating in the DTO. See Report of Investigation by Travis A. Chavez (dated June 9, 2021) ¶ 18, at 3, filed June 16, 2026 (Doc. 1026)("Chavez Report")("VIGIL stated he purchased a 9mm handgun for $900 from PADILLA. VIGIL stated PADILLA also gave him (VIGIL) a shotgun."). Thus, even accepting Vigil's version of events, he both obtains through and retains the firearms because of circumstances in connection with the conspiracy.

Significantly, Vigil does not explain why the firearms lack the potential to facilitate the conspiracy before he leaves the DTO. See Objections at 1-10. At a minimum, the record demonstrates that Vigil possesses firearms Padilla supplies, who is the DTO's leader, during the period of Vigil's participation in the conspiracy. Moreover, Vigil pleads guilty to participation throughout the duration of the conspiracy. See 2026 Tr. at 18:21-23 (Ramirez); Plea Agreement ¶ 9, at 5, filed April 1, 2022 (Doc. 677)("Plea Agreement")("Beginning on or about October 17, 2018, and continuing until on or about November 8, 2018, I, Johnathan Vigil, admit that I knowingly and voluntarily conspired with other defendant . . . ."). Although firearms may serve multiple purposes, the possibility of Vigil's dual use does not establish that he does not possess the firearms in connection with the offense. The relevant inquiry is whether the firearms facilitate or have the potential to facilitate the offense. Hargrove is instructive on this point.

In Hargrove, the Tenth Circuit affirms the district court's determination that the defendant "did not establish a basis for safety-valve relief under U.S.S.G. § 5C1.2." 911 F.3d at 1335. Relevant here, the defendant, in Hargrove, argues that "the evidence indicated that he had the firearms *only* as protection against snakes" and that he does not possess the firearms in connection with drug trafficking. 911 F.3d at 1334 (emphasis in the original). The Tenth Circuit affirms the district court's finding "that '[t]he presence of firearms was not coincidental or entirely unrelated to the drug transaction.'" 911 F.3d at 1334 (quoting United States v. Hargrove, No. CR 16-2705 RB, 2017 WL 3172832 at *2 (D.N.M. May 25, 2017)(Brack, J)). Notably, the district court further explains that, "[e]ven if the firearms did not directly facilitate the drug transaction, they certainly had the potential to do so." United States v. Hargrove, 2017 WL 3172832 at *2. The same reasoning applies here. Even if Vigil acquires or retains the firearms for protection, the firearms are not coincidental or entirely unrelated to the conspiracy. Vigil's own account establishes that

Padilla supplies the firearms during the conspiracy, and Vigil retains the firearms because of threats allegedly arising from his involvement in that same criminal enterprise. Under those circumstances, the Court cannot conclude that Vigil does not possess the firearms in connection with the offense. At the very least, the firearms possess the potential to facilitate the conspiracy and are tied closely to the circumstances surrounding Vigil's participation in the conspiracy. See Hargrove, 911 F.3d at 1331 ("[I]t is well established that firearms are 'tools of the trade' -- that is, means for the distribution of illegal drugs." (quoting United States v. Martinez, 938 F.2d 1078, 1083 (10th Cir. 1991))).

## II. THE PURPOSE THAT VIGIL ADMITS FOR POSSESSING THE FIREARMS ESTABLISHES THE REQUISITE CONNECTION BETWEEN HIS CONDUCT, THE FIREARMS, AND THE CONSPIRACY.

Vigil's conduct and admissions support the conclusion that he possesses the firearms "in connection with the offense." U.S.S.G. § 5C1.2(a)(2). The Tenth Circuit instructs courts evaluating safety-valve eligibility to focus on the defendant's own conduct. See Hargrove, 911 F.3d at 1327-28. Vigil attempts to transform that inquiry into one requiring proof that he subjectively intends to advance the DTO's objectives. See Objections at 7-8 (arguing that he "did not have the requisite intent to facilitate the DTO's transaction or objectives and thus [the firearm possession] was not in connection with the drug trafficking offense"). Neither Zavalza-Rodriguez nor Rosemond v. United States, upon which Vigil relies, imposes such a requirement. See Objections at 6-7.

In Zavalza-Rodriguez, the Tenth Circuit affirms a district court's application of § 5C1.2's reduction, "distinguish[ing] situations involving mere constructive possession . . . from those where a defendant acknowledged actual possession of a firearm." Hargrove, 911 F.3d at 1330 (citing Zavalza-Rodriguez, 379 F.3d at 1186 n.2). The Tenth Circuit emphasizes that the safety-

valve inquiry turns on the defendant's own conduct, and whether there exists a "'close connection linking the individual defendant, the weapon and the offense.'"  Hargrove, 911 F.3d at 1331 (quoting Zavalza-Rodriguez, 379 F.3d at 1187).  Likewise, although Rosemond v. United States addresses aiding-and-abetting liability under 18 U.S.C. § 924(c), the Supreme Court's focus on the defendant's own knowledge and conduct is consistent with § 5C1.2's conduct inquiry.  See Rosemond v. United States, 572 U.S. at 79 (stating that "the § 924(c) defendant's knowledge of a firearm must be advance knowledge").  See also United States v. Pena-Sarabia, 297 F.3d 983, 989 (10th Cir. 2002)(holding that "a joint criminal actor's firearm possession is not attributable to a defendant for purposes of applying the mandatory minimum safety valve provision of U.S.S.G. § 5C1.2(2)").  Neither of these authorities holds that a defendant must possess a firearm with the specific purpose of advancing a conspiracy before the firearm may be possessed "in connection with" the offense.

Here, Vigil's own conduct demonstrates the requisite connection.  As discussed above, Vigil acquires the firearms from Padilla while participating in the conspiracy.  See Chavez Report ¶ 18, at 3.  More importantly, Vigil admits that he retains the firearms, because he intends to use them for protection.  See Objections at 7.  The Court need not determine whether Padilla threatens Vigil or whether Vigil's fears are reasonable.  Even accepting Vigil's explanation as true, his admission establishes that he views the firearms as instruments for protection during violent encounters in drug trafficking.  That conduct is activity which the Tenth Circuit instructs courts to consider.  Firearms that defendants maintain for protection are not passive objects; they are weapons kept available for use when circumstances go awry.  See Hargrove, 911 F.3d at 1331.  By his own account, Vigil maintains the firearms, because he is prepared to use them if the need arises.

Moreover, Vigil does not explain why the firearms lack the same protective function while

he remains an active participant in the DTO. Vigil acquires the firearms during the conspiracy, they remain in his possession throughout his participation in DTO, and he ultimately retains them, after leaving the DTO, because of circumstances arising from that conspiracy. Vigil's characterization of the firearms as a "shield" rather than a "sword" does not alter the close connection linking himself, the weapons, and the conspiracy. Objections at 7. A firearm that a defendant possesses for protection is no less capable of facilitating an offense than a firearm possessed for an expressly offensive purpose, because its availability in response to actual or threatened violence gives it the potential to facilitate criminal activity. See United States v. Hallum, 103 F.3d at 89 (affirming a district court's rejection of testimony "declaring that if defendants were afraid of and protecting against snakes they would not have left the rifle in the vehicle some 200 yards from the marijuana patch"), overruled on other grounds by Pena-Sarabia, 297 F.3d 983, 989 n.2 (10th Cir. 2002)(overruling by an en banc footnote). Vigil's explanation for the weapons confirms the characteristic that makes firearms capable of facilitating drug-trafficking activity: their capacity to protect persons, drugs, proceeds, and participants from threats.

Finally, this case bears little resemblance to Zavalza-Rodriguez. There, the defendant denies knowledge of the firearm, and investigators connect him to the gun only through the constructive-possession principles underlying § 2D1.1(b)(1). See Zavalza-Rodriguez, 379 F.3d at 1184-85. Here, by contrast, Vigil admits ownership and possession of the firearms. See Objections at 6-7. Investigators find the firearms loaded in his residence and in proximity to controlled substances. See Report of Investigation (dated September 19, 2019) ¶¶ 18, 23 at 3-4, filed June 16, 2026 (Doc. 1025)("Report of Investigation"). This case is not a situation in which Vigil's sentence turns on the conduct of a coconspirator. Rather, the Court declines to apply the

safety valve, because Vigil's own conduct demonstrates a close connection between himself, the firearms, and the conspiracy.  Vigil purchases or receives the firearms during the conspiracy, maintains possession of them, and acknowledges their continued utility as instruments of protection.  Under Hargrove and Zavalza-Rodriguez, those facts establish that Vigil possesses the firearms in connection with the offense.

### III.    VIGIL'S ACTIVE POSSESSION OF THE FIREARMS, THEIR PROXIMITY TO THE DRUGS, AND THEIR POTENTIAL TO FACILITATE THE CONSPIRACY SUPPORT DENIAL OF SAFETY-VALVE RELIEF.

The third principle that the Tenth Circuit identifies supports the conclusion that Vigil possesses the firearms in connection with the offense.  The Tenth Circuit explains that, "when a defendant 'did not argue that the gun was not actually his nor that it was merely constructively possessed,' 'a gun's proximity and potential to be used in connection with the offense' may well be sufficient to bar safety-valve relief."  Hargrove, 911 F.3d at 1330 (quoting Zavalza-Rodriguez, 379 F.3d at 1186 n.2).  That principle applies here.  Vigil does not dispute that he knowingly possesses the firearms which investigators find in his residence.  Although Vigil asserts in his Objections that the Bersa Thunder and the Bryco Arms 380 pistols "were legally owned" by his father, and that the Springfield Armory Saint 5.56 caliber rifle "belonged to [Vigil]'s friend," Objections at 5, he does not dispute that the agents locate the firearms in his residence and under his control.  Indeed, Vigil effectively concedes ownership of the Keltec CNC Industries 12-gauge shotgun, which he previously reports to investigators Padilla gives him.  See Chavez Report ¶ 18, at 3.  Whether Vigil legally owns each firearm is ultimately immaterial.[5]  The relevant inquiry

---

[5] Although ownership is not dispositive, Vigil's inconsistent statements regarding ownership bear on the weight and credibility of his explanation for possessing the firearms.  On the one hand, Vigil asserts that several of the firearms belong to his father or to a friend.  See Objections at 5.  On the other hand, Vigil asserts that he possesses them for "self-defense." Objections at 8.  Vigil does not explain why firearms that he alleges his father and friend own are

under § 5C1.2 is whether Vigil possesses the firearms in connection with the offense, and not whether he owns them.

The record demonstrates that Vigil actively possesses the firearms, and exercises dominion and control over them. Investigators discover the shotgun in the residence's main living area together with controlled substances and other drug trafficking evidence. See Report of Investigation ¶ 26, at 16. The shotgun alone is sufficient to defeat safety-valve eligibility. See Hargrove, 911 F.3d at 1330. Notably, the shotgun is loaded, a fact that the Tenth Circuit regards as significant in Hargrove. See 911 F.3d at 1331 (noting that the district court specifically found "(2) that the firearms -- which were loaded -- had the potential' to facilitate the drug trafficking, even if the firearms did not do so directly" (quoting United States v. Hargrove, 2017 WL 3172832 at *2)). Here, all of the firearms except the Bersa Thunder are loaded and located in close proximity to the drugs that agents recover from Vigil's residence. See Report of Investigation ¶¶ 17-26, at 17-18. Those facts demonstrate both the firearms' proximity to the offense and their potential to facilitate it. This conclusion accords with the Tenth Circuit's recognition that

> there is no requirement one must own the firearms in question to be ineligible for a safety valve reduction. Instead, as previously explained, possession may be demonstrated by one's own conduct, where, for instance, one 'knowingly holds the power and ability to exercise dominion and control' over the firearm, especially

nevertheless in his house for his personal protection. Another person may own a firearm that Vigil possesses, but his explanation leaves unanswered how these firearms came into his possession. That unanswered question undermines the credibility that he maintains the firearms solely for self-defense and not in connection with the conspiracy. See Hargrove, 911 F.3d at 1332 n.14 ("Panels of this court have frequently declined to credit self-serving statements about the purpose of a defendant's firearm possession."). The Court must assess the credibility of Vigil's explanation in determining whether he carries his burden of proving safety-valve eligibility. See United States v. Stephenson, 452 F.3d 1173, 1180 (10th Cir. 2006)(explaining that "'the district court's application of the safety valve is fact specific and dependent on credibility determinations'" (quoting United States v. Virgen-Chavarin, 350 F.3d 1122, 1129 (10th Cir.2003)). To the extent Vigil's statements regarding ownership and purpose are inconsistent, the Court affords them little weight in evaluating whether Vigil establishers by a preponderance of the evidence that he does not possess the firearms in connection with the offense.

where, as here, the defendant had exclusive possession of the premises where it was found . . . and the firearm had the requisite proximity and potential to facilitate the drug trafficking offense.

United States v. Andrade-Vargas, 459 F. App'x 762, at *6 (10th Cir. 2012)(quoting United States v. King, 632 F.3d 646, 651 (10th Cir. 2011), and citing United States v. Hallum, 103 F.3d at 89). In sum, Vigil's active possession of the firearms, his dominion and control over the premises where investigators find them, their proximity to controlled substances, and their potential to facilitate the conspiracy establish the requisite connection among Vigil, the firearms, and the conspiracy. Accordingly, the third principle which the Tenth Circuit articulates supports the Court's determination that Vigil possesses the firearms in connection with the conspiracy.

The Court concludes that: (i) the 2-level reduction is not appropriate, because Vigil does not establish by a preponderance of the evidence that he does not possess the firearms in connection with the conspiracy; (ii) Vigil possesses the firearms in connection with the conspiracy, because he acquires or receives the firearms during the conspiracy's course, admits that he retains them for protection, and maintains them loaded and in close proximity to controlled substances in areas under his exclusive control; (iii) the offense level is 25 and the criminal history category is I; and (iv) the advisory Guidelines range is 57 to 71 months.

**IT IS ORDERED** that: (i) the Court overrules the objection in the Sealed Ex Parte Sentencing Memorandum, filed May 27, 2026 (Doc. 1019), insofar as the Defendant contends that § 5C1.2 warrants a 2-level reduction; (ii) the applicable offense level is 25 and the applicable criminal history category is I; and (iii) the applicable Guidelines range is 57 to 71 months.

_____
UNITED STATES DISTRICT JUDGE

- 21 -

*Counsel:*

Todd Blanche
  Acting United States Attorney General
Ryan Ellison
  First Assistant United States Attorney
Elaine Y. Ramierz
Rachel Eagle
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

-- and --

Maria Ysabel Armijo
Randy M. Castellano
  Assistant United States Attorneys
Las Cruces, New Mexico

        *Attorneys for the Plaintiff*

Wayne Baker
Law Office of Wayne Baker
Albuquerque, New Mexico

        *Attorney for the Defendant*